UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
UNITED STATES OF AMERICA,                :
                                         :
        v.                               :
                                         :   **MEMORANDUM & ORDER**
ABDURASUL HASANOVICH JURABOEV,           :   15-CR-0095 (WFK)
                                         :
                        Defendant.       :
-----------------------------------------------------------------X

**WILLIAM F. KUNTZ, II, United States District Judge:**

On August 14, 2015, the defendant, Abdurasul Hasanovich Juraboev, pleaded guilty to one count of Conspiracy to Provide Material Support to a Foreign Terrorist Organization, in violation of 18 U.S.C. § 2339B(a)(1). The Court now sentences the defendant and provides a complete statement of reasons pursuant to 18 U.S.C. § 3553(c)(2) of those factors set forth by Congress and the President and contained in 18 U.S.C. § 3553(a). For the reasons discussed below, the defendant is hereby sentenced to 180 months of incarceration and payment of a $100.00 special assessment.

## BACKGROUND

On February 24, 2015, the United States filed a Complaint against Abdurasul Hasanovich Juraboev ("Defendant") and two co-defendants, alleging they had conspired to provide material support to a foreign terrorist organization, to wit the Islamic State of Iraq and the Levant ("ISIL"). ECF No. 1. The Government subsequently indicted Defendant and his co-defendants on March 9, 2015, ECF No. 14, and thereafter filed two Superseding Indictments on April 6, 2015, and June 8, 2015, respectively, ECF Nos. 28 & 63. On August 14, 2015, Defendant pleaded guilty to the first count of the Second Superseding Indictment (S-2), which alleged one count of Conspiracy to Provide Material Support to a Foreign Terrorist Organization, in violation of 18 U.S.C. § 2339B(a)(1). The Court hereby sentences Defendant and sets forth its reasons for Defendant's sentence using the rubric of the 18 U.S.C. § 3553(a) factors pursuant to 18 U.S.C. § 3553(c)(2).

1

## DISCUSSION

### I. Legal Standard

18 U.S.C. § 3553 outlines the procedures for imposing a sentence in a criminal case. If and when a district court chooses to impose a sentence outside of the Sentencing Guidelines range, the court "shall state in open court the reasons for its imposition of the particular sentence, and . . . the specific reason for the imposition of a sentence different from that described" in the Guidelines. 18 U.S.C. § 3553(c)(2). The court must also "state[] with specificity" its reasons for so departing "in a statement of reasons form." *Id.*

"The sentencing court's written statement of reasons shall be a simple, fact-specific statement explaining why the guidelines range did not account for a specific factor or factors under § 3553(a)." *United States v. Davis*, 08-CR-332, 2010 WL 1221709, at *1 (E.D.N.Y. Mar. 29, 2010) (Weinstein, J.). Section 3553(a) provides a set of seven factors for the court to consider in determining what sentence to impose on a criminal defendant. The Court addresses each in turn.

### II. Analysis

#### A. The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant

The first § 3553(a) factor requires the Court to evaluate "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1).

Defendant was born on July 28, 1990, in the Jizzakh Province of Uzbekistan, to married parents, with whom he shares a close relationship. *See* Presentence Investigation Report ("PSR") ¶ 45, ECF No. 116. Defendant has three brothers and two sisters, with whom he is also close. *Id.* ¶ 47. Defendant's parents are farmers who raised him in a low-income household where Defendant was provided with the basic necessities, but the family could only afford to pay

2

for electricity or other utilities approximately thirty percent of the time. *Id.* ¶¶ 45-46. Defendant has explained that most of the people in his village lived under similar circumstances. *Id.* ¶ 46. In 2008, Defendant graduated with the equivalent of a high school degree from School No. 34 in the Sobir Rakhimov District of Alamli, Uzbekistan. *Id.* ¶ 54.

Defendant continued to live in his family home until the age of twenty-one, at which time he received a visa to immigrate to the United States through the State Department's Diversity Immigrant Visa Program, commonly referred to as the "green card lottery." *Id.* ¶ 48. Although Defendant had no family residing in the United States, he took the opportunity to move to Brooklyn, New York, where he worked a number of jobs, including most recently as a salad cutter and delivery person for a gyro restaurant. *Id.* ¶¶ 48, 57-64. In 2012, Defendant completed a training program to work as a health care aid, but he has never worked in that field. *Id.* ¶ 55. Defendant had no criminal history prior to the instant arrest. *Id.* ¶ 40.

In August 2014, agents of the Federal Bureau of Investigation's ("FBI") Joint Terrorism Task Force discovered a post on the Uzbek language social media site www.hilofatnews.com ("Hilo Fat News") in which an individual, later determined to be Defendant, expressed support for ISIL, which has been designated a Foreign Terrorist Organization by the State Department. *Id.* ¶¶ 4, 7. In the same post, Defendant expressed a desire to be a martyr for ISIL and threatened to kill the President of the United States. *Id.* ¶ 7. After determining that Defendant was the author of the posts, FBI agents interviewed Defendant at his apartment on August 15, 2014. *Id.* During this interview, Defendant admitted to having written the posts and reiterated his support for ISIL, his desire to travel to Syria to fight with ISIL, and his intention to kill the President. *Id.* FBI agents interviewed Defendant again three days later; at this second interview, Defendant again expressed his support for ISIL and indicated he had posted on Hilo Fat News in order to

communicate his support to ISIL. *Id.* He also indicated his friend, Akhror Saidakhmetov, supported ISIL as well. *Id.*

After interviewing Defendant, FBI agents began a larger investigation into the activities of Defendant, Saidakhmetov, and their associates, which continued for approximately six months. *Id.* ¶¶ 8-9. The FBI found that Defendant and his associates had been in contact with ISIL operatives and supporters, including Saidakhmetov's employer, Abror Habibov, who had encouraged Saidakhmetov to travel to Syria to fight for ISIL. *Id.* The FBI also found that Defendant was in email contact with an ISIL representative known as Abu Bakr Bagdodi Halifat Dovlati Islamiya ("Bagdodi"), who had encouraged Defendant to undertake a violent jihad with ISIL. *Id.* ¶ 10. In response, Defendant requested ISIL issue a religious edict known as a fatwa directing him to do so. *Id.* Defendant also corresponded with Bagdodi about how to travel to Syria through Turkey, which Defendant and Saidakhmetov had discussed doing. *Id.* ¶ 11. The FBI also intercepted phone conversations between Saidakhmetov and Defendant, in which Saidakhmetov expressed a desire to join the United States military to act as a spy for ISIL, but Defendant expressed skepticism about whether this plan would be successful and said their best plan was to join ISIL in Syria instead. *Id.* ¶ 12.

Defendant and Saidakhmetov thereafter took steps to follow through on their plan to join ISIL, much of which they communicated to a confidential informant who had befriended them at the direction of the FBI. *Id.* ¶¶ 13-14. On December 29, 2014, Defendant purchased tickets to travel to Istanbul, Turkey, on a flight departing on March 29, 2015. *Id.* ¶¶ 15-16. He told the confidential informant he intended to travel from Turkey to Syria, and that in the event he was questioned about his travel plans, he would show officials his return ticket from Turkey and/or claim he was traveling to Uzbekistan to diffuse suspicion. *Id.* Saidakhmetov also confided in

4

the confidential informant about his plans to travel to Syria and asked the confidential informant to assist him in procuring the necessary travel documents. *Id.* ¶ 17. Saidakhmetov subsequently purchased plane tickets to Turkey with the assistance of Habibov, *id.* ¶¶ 18-21, and was arrested on February 25, 2015, at John F. Kennedy International Airport in Queens, New York, after attempting to travel to Turkey, *id.* ¶ 22. Defendant was arrested in his apartment in Brooklyn that same day. *Id.*

### B. The Need for the Sentence Imposed

The second § 3553(a) factor instructs the Court to consider "the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2).

The Court's sentence punishes Defendant for violating federal laws intended to deter terrorism, both foreign and domestic, and is crafted to deter him and others from making similar efforts to support and promote foreign terrorist organizations in the future. The Court's sentence also takes into account Defendant's youth, lack of criminal history, and good behavior while incarcerated.

### C. The Kinds of Sentences Available

The third § 3553(a) factor requires the Court to detail "the kinds of sentences available" for Defendant. 18 U.S.C. § 3553(a)(3).

Defendant pleaded guilty to one count of Conspiracy to Provide Material Support to a Foreign Terrorist Organization, in violation of 18 U.S.C. § 2339B(a)(1), for which he faces a maximum term of imprisonment of fifteen years. *See* 18 U.S.C. § 2339B(a)(1). Defendant also

faces a term of supervised release of up to life, *see* 18 U.S.C. § 3583(b)(2), (j); a term of probation of between one and five years, with one of the following special conditions imposed, unless extraordinary circumstances exist: a fine, restitution, or community service, *id.* §§ 3561(c)(1), 3563(a)(2); a maximum fine of $250,000.00, *see id.* § 3571(a); and a mandatory special assessment of $100.00, *see id.* § 3013.

### D. The Kinds of Sentence and the Sentencing Range Established For Defendant's Offenses

The fourth § 3553(a) factor requires the Court to discuss "the kinds of sentence and the sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines." 18 U.S.C. § 3553(a)(4)(A).

U.S. Sentencing Guidelines § 2M5.3 applies to 18 U.S.C. § 2339B(a)(1) offenses and provides a base offense level of twenty-six. *See* U.S. Sentencing Commission, *Guidelines Manual*, § 2M5.3 (Nov. 2016) ("USSG" or "Guidelines"). Because the offense involved the provision of material support or resources with the intent, knowledge, or reason to believe they would be used to commit or assist in the commission of a violent act, two levels are added. *Id.* § 2M5.3(b)(1)(E). An additional twelve levels are added because the offense is a felony that involved, or was intended to promote, a federal crime of terrorism. *Id.* § 3A1.4(a). Defendant's acceptance of responsibility by pleading guilty and his timely notification of his intent to do so permit a reduction of three levels. *Id.* § 3E1.1. Accordingly, Defendant's total adjusted offense level is thirty-seven. Because Defendant has no prior arrests or convictions, he has a criminal history score of zero, which would result in a criminal history category of one. PSR ¶ 40; USSG ch. 5, pt. A. Because the instant offense involved, or was intended to promote, a federal crime of terrorism, however, Defendant's criminal history category is automatically six. *Id.* § 3A1.4(b).

Given a total offense level of thirty-seven and a criminal history category six, the Guidelines suggest a term of imprisonment of three hundred sixty months to life. *Id.* at ch. 5, pt. A. However, the statutory maximum restricts the Guidelines term of imprisonment to one hundred eighty months. *Id.* § 5G1.1(a). The Guidelines further recommend a term of supervised release of between one year and life, *id.* § 5D1.2(a)(2), (b); a fine of between $20,000.00 and $200,000.00, *id.* § 5E1.2(c)(3), (h)(1); and payment of the costs of prosecution, *id.* § 5E1.5. The Guidelines suggest Defendant is ineligible for probation. *Id.* § 5B1.1(b)(3).

### E. Pertinent Policy Statement of the Sentencing Commission

The fifth § 3553(a) factor, requiring the Court to evaluate "any pertinent policy statement . . . issued by the Sentencing Commission," 18 U.S.C. § 3553(a)(5), is not relevant to Defendant's sentencing.

### F. The Need to Avoid Unwarranted Sentence Disparities

The sixth § 3553(a) factor requires the Court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). In considering the other six § 3553(a) factors, the Court's sentence sufficiently avoids unwarranted sentence disparities.

### G. The Need to Provide Restitution

Finally, the seventh § 3553(a) factor, which requires the Court to touch upon "the need to provide restitution to any victims of the offense," 18 U.S.C. § 3553(a)(7), is not relevant to Defendant's sentencing.

## CONCLUSION

A sentence of 180 months of incarceration and payment of the $100.00 special assessment is appropriate and comports with the dictates of § 3553. This sentence is consistent

with, and is sufficient but no greater than necessary to accomplish, the purposes of § 3553(a)(2). The Court expressly adopts the factual findings of the Presentence Investigation Report.

**SO ORDERED.**

                                                                 s/WFK
                                     HON. WILLIAM F. KUNTZ, II
                                     UNITED STATES DISTRICT JUDGE

Dated: October 27, 2017
       Brooklyn, New York